**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LORI S. YOKOYAMA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25 C 15304** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Lori Yokoyama sued Jennifer Peyton in the Circuit Court of Cook County asserting various tort claims based on Ms. Peyton's conduct as an assistant chief immigration judge and Ms. Yokoyama's supervisor. The United States removed this case to federal court based on the Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, 28 U.S.C. § 2679.[1] The government has moved to stay discovery and decide the threshold issue of scope of employment. For the reasons below, the Court grants the government's motion.

**Background**

The following facts are based on the allegations in Ms. Yokoyama's complaint, which the Court takes as true for purposes of ruling on the government's motion. Ms. Yokoyama is a former immigration judge who was employed by the Executive Office for

---

[1] Because a designee of the Attorney General certified Ms. Peyton acted within the scope of her employment, the United States was substituted as the party defendant. *See* 28 U.S.C. § 2679(d)(2).

Immigration Review (EOIR), Chicago Immigration Court. Ms. Peyton served as an assistant chief immigration judge, also employed by the EOIR, Chicago Immigration Court. Ms. Peyton was Ms. Yokoyama's supervisor.

In 2024, Ms. Peyton placed Ms. Yokoyama on administrative leave. During her administrative leave, Ms. Yokoyama prepared five written decisions for removal proceedings that were pending before her and emailed the decisions to Ms. Peyton. Ms. Yokoyama alleges that Ms. Peyton accessed and adopted the decisions, signed and issued them under her own name as the deciding immigration judge, falsely represented to the EOIR, the Board of Immigration Appeals (BIA), and performance evaluators that she authorized the decisions, and logged the decisions as her own completed cases. According to Ms. Yokoyama, Ms. Peyton "acted to inflate her own case-completion statistics, offset her BIA remands, improve her performance valuation, and protect her position as an [assistant chief immigration judge] at EOIR." Compl., ¶ 13. Ms. Peyton also published the decisions under her own name to create and disseminate a "false narrative" concerning Ms. Yokoyama's "performance, productivity and professional competence." *Id.* at ¶ 24. The EOIR's policy required approval by the chief immigration judge for any reassignment or issuance of another judge's decisions, but Ms. Peyton bypassed these procedures. Ms. Yokoyama alleges that Ms. Peyton's actions were undertaken for personal gain and advantage and that her conduct conferred no benefit to EOIR or the United States. In November 2024, Ms. Peyton informed Ms. Yokoyama that she was not going to be converted to a permanent immigration judge position based on alleged performance and conduct factors.

In November 2025, Ms. Yokoyama filed the present lawsuit in Cook County

2

Circuit Court asserting seven claims against Ms. Peyton: 1) defamation per se; 2) conversion; 3) intentional interference with employment relationship; 4) breach of fiduciary duty; 5) fraudulent misrepresentation; 6) intentional infliction of emotional distress; and 7) tortious interference with prospective economic advantage. A month later, the United States removed the case. In support of removal, a designee of the Attorney General certified that Ms. Peyton's alleged conduct was undertaken within the scope of her federal employment.

The same day it removed the case, the government filed a motion to dismiss for failure to exhaust administrative remedies. A few days later, Ms. Yokoyama filed a motion to remand. The Court deferred setting a schedule on the motion to dismiss pending consideration of Ms. Yokoyama's motion to remand. In January 2026, the Court denied Ms. Yokoyama's motion to remand. In the absence of any appearance by the government at the January 2026 hearing, the Court granted Ms. Yokoyama's request for discovery, in part. Specifically, the Court allowed her to serve up to seven interrogatories and seven requests for production. After objecting to most of the discovery requests, the government filed the present motion to stay discovery and decide the threshold issue of scope of employment on the pleadings. In her response, Ms. Yokoyama also moved to compel responses to her discovery requests.

**Discussion**

**A.     Scope of employment**

"The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their

3

official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). "Upon certification by the Attorney General [or her designee] that the defendant employee was acting within the scope of [her] . . . employment" a state court action shall be removed and "deemed to be an action or proceeding brought against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(2). The certification creates a rebuttable presumption that the federal employee was acting within the scope of her employment. *Ezkiel v. Michel*, 66 F.3d 894, 896 (7th Cir. 1995) ("once the Attorney General certifies that a defendant employee was acting within the scope of his federal employment, the plaintiff bears the burden of demonstrating otherwise").

"The plaintiff may challenge the substitution of the United States as the sole defendant, however, by contesting the scope certification and arguing that the employee defendant was not acting within the scope of employment at the time the tortious conduct occurred." *Taboas v. Mlynczak*, 149 F.3d 576, 579 n. 1 (7th Cir. 1998). When a review of the certification is requested, the plaintiff bears the burden of proving that the federal employee's conduct was outside the scope of her employment. *Taboas*, 149 F.3d at 582. State law governs whether a government employee acted within the scope of her employment. *Id.*

Ms. Yokoyama argues that scope of employment "is a fact-intensive question, and Illinois courts hold that determinations are highly fact-dependent and rarely resolved at the pleadings stage." Pl.'s Resp. at 8. She also contends that "scope of employment is a question of fact for the jury to decide." *Id.* This is incorrect.

The question before the Court is whether the Westfall Act governs this case. After certification, the action is "deemed to be . . . brought against the United States,"

4

unless and until the district court determines that the federal officer originally named as defendant was acting outside the scope of her employment. 28 U.S.C. § 2679(d)(2). Because "[t]he Seventh Amendment, which preserves the right to a jury trial in common-law suits, . . . does not apply to proceedings against the sovereign," . . . "at the time the district court reviews the Attorney General's certification, the plaintiff has no right to a jury trial." *Osborn*, 549 U.S. at 252. The Court therefore has a greater fact-finding role in a Westfall Act case than in other immunity contexts. *Id.* at n. 18. The Court must decide who the proper defendant is: Ms. Peyton or the United States. This decision "cannot be left for jury resolution late in [the] proceedings without undermining the Westfall Act's very purpose[.]" *Id.*

Under Illinois law, three general criteria govern the Court's analysis of whether an employee's allegedly tortious conduct occurred within the scope of employment: whether "(a) it is of the kind [she] is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master[.]" *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 164, 862 N.E.2d 985, 992 (2007) (quoting Restatement (Second) of Agency § 228 (1958)). "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.*

The government argues that the "only element at issue in this case is the last, namely whether Peyton's *only* subjective motivation for suspending Yokoyama and allegedly issuing opinions that Yokoyama drafted without giving her attribution were personal to Peyton and not in at least part to serve her employer's interest." Def.'s

5

Mem. of L. at 4.  Ms. Yokoyama responds that there is no evidence regarding whether Ms. Peyton's actions occurred "far beyond the authorized time and space" limits because there is no information on when or where Ms. Peyton signed the decisions. Pl.'s Resp. at 9.  Ms. Yokoyama argues that Ms. Peyton did not have the authority to sign another immigration judge's decision without permission or reassignment. According to Ms. Yokoyama, information related to whether Ms. Peyton violated EOIR's policies and procedures when she issued the decisions is relevant to determining whether her actions were self-serving and thus outside the scope of employment.  Ms. Yokoyama also argues that the content of the immigration decisions is "essential to assess alternations or impropriety and what representations [Ms.] Peyton made when she issued them."  *Id*. at 10.  She contends that flawed credibility determinations would result in a remand of the decision that would result in more, not less, work for EOIR and shows that Ms. Peyton's conduct "served no employer purpose but solely her own personal interests."  *Id.* at 11.  She also argues that the government has not produced any evidence that Ms. Peyton's actions were motivated to benefit EOIR.

Ms. Yokoyama's arguments are unpersuasive.  Ms. Peyton's supervision of Ms. Yokoyama and issuance of decisions in immigration proceedings are actions of the kind that Ms. Peyton was employed to perform.  As a matter of common sense, this conduct falls within the core responsibilities of a supervising immigration judge.  Ms. Yokoyama does not meaningfully argue otherwise.

Ms. Yokoyama does argue that there is no evidence regarding whether Ms. Peyton's actions occurred far beyond the authorized time and space limits.  But even if Ms. Peyton issued a decision over a weekend or from home, that fact would not cause

the conduct to fall outside of the authorized time and space limits for performing work related to her employment. *Lopez v. Vanderwater*, 620 F.2d 1229, 1234 (7th Cir. 1980). People, including judges, commonly work from home (either during regular business hours or off hours); work responsibilities carried out from home are no less within the scope of employment than those done from the office.

That leaves the last criterion: whether Ms. Peyton's conduct—issuing decisions that Ms. Yokoyama authored and supervising Ms. Yokoyama—was motivated, at least in part, by a purpose to serve the EOIR. Illinois courts use the "frolic vs. detour" analysis to determine whether an employee is serving her employer's purpose. *Garland v. Sybaris Club Int'l, Inc.*, 2014 IL App (1st) 112615, ¶ 90, 21 N.E.3d 24, 54 (quoting *Rodman v. CSX Intermodal, Inc.*, 405 Ill. App. 3d 332, 338, 938 N.E.2d 1136, 1141 (2010)). "A detour occurs where the employee's deviation for personal reasons is seen as sufficiently related to the employment." *Id.* "In contrast, a frolic occurs where the employee's personal business is seen as unrelated to employment." *Id.* An employee's actions may simultaneously serve both business and personal purposes. *Id.*, ¶ 91, 21 N.E.3d at 54. In such a case, an action is considered to be personal if it "would have been made in spite of the failure or absence of the business purpose and would have been dropped in the event of failure of the private purpose" even if the business purpose was not complete. *Id.* An action is considered to be related to employment if it "would have been made in spite of the failure or absence of the private purpose" because the action to be performed for the employer would have been accomplished by another employee "even if it had not coincided with the employee's personal [action]." *Id.*

Ms. Yokoyama's own allegations recognize that Ms. Peyton was motivated, at least in part, to serve the EOIR.  She alleges that Ms. Peyton "acted to inflate her own case-completion statistics, offset her BIA remands, improve her performance evaluation, and protect her position as an [assistant chief immigration judge] at EOIR."  Compl., ¶ 13.  Ms. Yokoyama also alleges that Ms. Peyton owed her "duties of loyalty, honesty, good faith, and fair dealing in supervision and performance evaluation."  *Id.* at ¶ 41.  Although Ms. Peyton may have been motivated by personal interests, these allegations reflect that those personal interests must have coincided with her business purpose—serving the EOIR.  It would be illogical for Ms. Peyton to act with the goal of enhancing her performance metrics, evaluation, and supervisory role at the EOIR without *any* motivation to serve the EOIR.

Ms. Yokoyama's arguments to the contrary focus on the impact on the EOIR's operations and whether Ms. Peyton's conduct violated the EOIR's policies and procedures.  These arguments lack merit.  The question is whether Ms. Peyton's conduct was "actuated, at least in part, by a purpose to serve" the EOIR.  *Bagent*, 224 Ill. 2d at 164, 862 N.E.2d at 992.  Even accepting as true that Ms. Peyton's actions ultimately did not provide a benefit to the EOIR, this would not mean that she was not motivated, at least in part, to serve the EOIR when she issued the immigration decisions and supervised Ms. Yokoyama.

Furthermore, an act is not outside the scope of employment "simply because an employee does a forbidden act while engaged in the business of the employer."  *Rodman*, 405 Ill. App. 3d at 339–40, 938 N.E.2d at 1142.  Even "negligent, willful, malicious, or even criminal acts" of an employee can be within the scope of

8

employment. *Adames v. Sheahan*, 233 Ill. 2d 276, 298, 909 N.E.2d 742, 755 (2009); *Bagent*, 224 Ill. 2d at 163–64, 862 N.E.2d at 991–92. As an assistant chief immigration judge, Ms. Peyton was authorized to issue immigration decisions and to place Ms. Yokoyama on leave. Ms. Yokoyama alleges that Ms. Peyton's actions were malicious and violated EOIR's policies and procedures. But these alleged violation of policies and procedures does not cause Ms. Peyton's conduct to fall outside of the scope of the kind of work she was employed to perform and does not suggest that her actions were motivated solely by personal benefit. The same is true even if Ms. Peyton acted with malicious intent.

For these reasons, the Court concludes that Ms. Peyton's relevant conduct occurred within the scope of her employment and she is immune under the Westfall Act. The United States will remain the sole defendant in this case.

**B.      Discovery**

In her response, Ms. Yokoyama moves to compel responses to her discovery requests. The discovery requests focus on whether Ms. Peyton's conduct violated the EOIR's policies and procedures. Ms. Yokoyama also seeks the immigration decisions Ms. Peyton issued and argues that the decisions are relevant to show Ms. Peyton's conduct was not motivated by a purpose to serve the EOIR. Responses to these requests would not change the Court's analysis. As discussed, Ms. Yokoyama's focus on whether Ms. Peyton's conduct violated the EOIR's policies and procedures EOIR does not impact the analysis of scope of employment. Even if Ms. Peyton's conduct violated those policies and procedures, it was undertaken within the scope of her employment. Similarly, the contents of the immigration decisions would not alter the

Court's analysis. As discussed, whether the EOIR actually benefitted from Ms. Peyton's actions does not change her motivation to serve the EOIR. The Court therefore denies Ms. Yokoyama's motion to compel discovery responses.

### Conclusion

For the reasons stated above, the Court grants the government's motion to stay discovery and decide the scope of employment issue [dkt. no. 18] and denies Ms. Yokoyama's motion to compel discovery responses [dkt. no. 21]. The Clerk is directed to terminate Jennifer Peyton as a defendant in this case and is directed to change the caption and title of the case to read Yokoyama v. United States of America. The status hearing set for April 6, 2026 is vacated. The parties are directed to confer regarding a schedule for further proceedings and are to file a joint status report with a proposed schedule by April 8, 2026. The Court sets the case for a telephonic status hearing on April 15, 2026 at 9:10 a.m., using call-in number 650-479-3207, access code 2305-915-8729 to discuss setting a schedule on the government's pending motion to dismiss.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 1, 2026

10